UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEVIN JORDAN,

        Plaintiff,

v.

Case Number 10-14786
Honorable Thomas L. Ludington

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____/

**OPINION AND ORDER OVERRULING DEFENDANT'S OBJECTIONS, ADOPTING JUDGE BINDERS'S REPORT AND RECOMMENDATION, GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING CASE TO COMMISSIONER FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION AND ORDER**

This case arises out of an application for social security benefits filed by Plaintiff Kevin Jordan. Notwithstanding his diagnosis as a paranoid schizophrenic, Plaintiff represented himself at the hearing before the administrative law judge. Plaintiff asked no questions of the witnesses, and the hearing lasted twenty minutes. The judge decided that Plaintiff is not entitled to benefits. Now at issue is whether the administrative law judge adequately performed his responsibility to provide Plaintiff a full and fair hearing with a sufficiently developed record. Concluding that the judge did not sufficiently perform this duty, Magistrate Judge Charles Binder issued a report and recommendation (ECF No. 12) recommending that the Court grant Plaintiff's motion for summary judgment (ECF No. 10), deny Defendant Commissioner of Social Security's motion for summary judgment (ECF No. 11), and remand this case to the Commissioner for further proceedings under sentence four of 42 U.S.C. § 405(g).

Any party may serve and file written objections to a report and recommendation "[w]ithin fourteen days after being served with a copy" of the report. 28 U.S.C. § 636(b)(1). The district court "shall make a de novo determination of those portions of the report . . . to which objection is made." *Id*. The Court is not obligated to further review the portions of the report to which no objection was made. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985).

Defendant timely filed two objections to Judge Binder's report. ECF No. 13. First, Defendant argues, Plaintiff waived his right to counsel. Second, Defendant contends, the administrative law judge adequately developed the record. After considering Defendant's objections, the Court concludes that Plaintiff did not knowingly and intelligently waive his right to counsel and was not provided a full and fair hearing with a sufficiently developed record. Accordingly, Judge Binder's report will be adopted, Plaintiff's motion for summary judgment will be granted, Defendant's motion for summary judgment will be denied, and the case will be remanded to the Commissioner for further proceedings.

**I**

The Commissioner of Social Security determines whether a claimant is disabled in accordance with a five-step process. 20 C.F.R. § 404.1520(a)(4)(i)–(v). A claim is allowed when it is demonstrated that: (1) the claimant is not engaged in "substantial gainful employment"; (2) the claimant suffers from a severe impairment which has lasted or is expected to last for twelve continuous months; (3) the impairment meets or is equal to one of the enumerated impairments; (4) ; the claimant does not retain the "residual functional capacity" to perform his "past relevant work"; and (5) the claimant is unable to perform any other gainful employment in light of the claimant's "residual functional capacity, age, education, and work

experience." 20 C.F.R. § 416.920(a)(4)(i)–(v). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 CFR § 404.1520 (1982)). "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Id.*

The Court reviews the administrative law judge's decision to determine whether the "factual findings . . . are supported by substantial evidence." *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990) (citing 28 U.S.C. § 405(g)). Substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A district court does not resolve conflicts of evidence or issues of credibility. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). If the administrative law judge's decision is supported by substantial evidence, it must be affirmed, even if substantial evidence supports the opposite conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

## II

### A

Plaintiff is a fifty-five year old man whose academic education culminated with a high school diploma. R. at 15. When Plaintiff was sixteen, he was diagnosed with asthma. R. at 16. Two decades passed. At age thirty-five, he was diagnosed as schizophrenic. R. at 185. The diagnosis began when Plaintiff's pastor brought him to the White Pine Psychiatric Center in Saginaw, Michigan, "as he had been 'barking like a dog' in church. He had [also] been exhibiting religious preoccupation, referring to his pastor as 'God.'" R. at 186. Following his

admission to White Pine, Plaintiff was "noted to be pacing, running out of his room naked and requiring redirection from staff.  He was . . . holding his Bible, stating 'this is my doctor and it says I can leave.'  He was quite delusional.  He stated he was hearing God's voice." *Id*. Diagnosed with schizophreniform disorder, Plaintiff was prescribed Haldol.  R. at 185.

Two decades again passed, during which Plaintiff worked as a door-to-door salesperson for a lawn care company and as a stocker for a grocery store.  In May 2009, Plaintiff filed an application for disability insurance benefits and supplemental security income, alleging that he was disabled because of his chronic asthma.  R. at 10.  The application was denied. *Id*.  Plaintiff filed a request for a hearing before an administrative law judge, explaining: "I disagree with determination made on my claim . . . because I was never seen or examined by a [doctor.]  I have chronic asthma and have been let go by 2 employers because of missing work[.]  My breathing has been diminished."  R. at 56 (capitalization omitted).

On the morning of May 3, 2010, Administrative Law Judge Andrew Sloss held a hearing on Plaintiff's application.  Judge Sloss began the hearing by observing that Plaintiff was unrepresented and notifying him of his right to representation.  After reciting Plaintiff's rights, the two gentlemen had the following conversation:

> [Judge]: Do you understand your rights to getting a representative?
> [Plaintiff]: Yeah, I did. Yeah, she's just a friend, yeah.
> [Judge]: Okay.  Would you like to try and get a professional —
> [Plaintiff]: I, I, I had talked to somebody. They just, the time span they just sounded like they just wanted me to wait for monetary reasons.
> [Judge]: They wanted you to wait for monetary reasons?
> [Plaintiff]: Yeah, they was talking about, well, it'd been long enough if you wait this at the time, you know.
> [Judge]: Okay.  I don't really understand what you're saying.
> [Plaintiff]: They saying like if, like if I didn't — if got them they wanted to postpone it.  Because the longer it take the more money I would get but I didn't want to go through that.

-4-

| | |
|---|---|
| [Judge]: | No, that doesn't make too much sense. |
| [Plaintiff]: | Well, the two lawyers I talked to that's what they said. They wanted me to put it off. |
| [Judge]: | Okay. |
| [Plaintiff]: | I had hired Tim Wright (Phonetic), I had him but I talked to him when he came to the house and he said, well, they don't usually see a case this early, that's a bad sign. We need to tell the Judge that you want to, well, all that crazy stuff. And I said, well, may I, you know. So I told him I didn't want him. |
| [Judge]: | All right. |
| [Plaintiff]: | I authorized him to get documents and stuff and he sent the stuff that he, I told him I didn't want him, so he sent them to me. |
| [Judge]: | Okay, all right. Well, do you want to proceed today by yourself — |
| [Plaintiff]: | Yeah. |
| [Judge]: | — or would you like to try and get a Representative? |
| [Plaintiff]: | No. |
| [Judge]: | If you tried to get a Representative it would only postpone it about a month. |
| [Plaintiff]: | I don't want to — |
| [Judge]: | Okay. |
| [Plaintiff]: | — I don't nobody. |
| [Judge]: | Okay, all right. And in the, in the hearing room is Brenda Crockett (Phonetic), who is a friend of yours. And why don't you come sit next to him so there's a microphone in case we need for you to testify. |
| [Plaintiff]: | She'll, she'll notice too — |
| [Judge]: | Okay. |
| [Plaintiff]: | — she's my friend. We go to the same church — |
| [Judge]: | Okay. |
| [Plaintiff]: | — that's why I told her to come. |
| [Judge]: | Okay. |

R. at 24–25. Judge Sloss did not inquire further into whether Plaintiff understood his right to representation or whether he was intelligently waiving this right. Rather, Judge Sloss proceeded to examine Plaintiff on his physical limitations. For example, the judge asked:

| | |
|---|---|
| [Judge]: | At, at home are you able to cook your own meals, do housework, things like that? |
| [Plaintiff]: | I do microwave stuff. I'm all right, you know. I mean I don't, I'm no cook. |
| [Judge]: | Do you get out to go shopping, visit friends, go to church, things like that? |

-5-

> [Plaintiff]: That's what she does, she takes me places. My mother, I live with my mother.
> [Judge]: Okay. And do you have trouble sitting for long periods of time?
> [Plaintiff]: Just because I get agitated not from soreness or back problem, I guess —
> [Judge]: Okay.
> [Plaintiff]: — get agitated. I can't sit still long.
> [Judge]: How long can you stand and walk at one time?
> [Plaintiff]: As long as I'm not short — that's another thing I was going to say. If I walk five blocks I just have to chill for a minute, that's all, you know. It don't send me into no, I don't fall out or nothing but I just have to be careful.
> [Judge]: What's the heaviest thing you lift around the house?
> [Plaintiff]: See, I can, I can lift something like this. But if I try to lift a TV, which I can do it because I'm a man, I don't — I live with my mother, she's 70 some years old, so I have to lift stuff. . . .

R. at 31–32. Judge Sloss did not inquire further into Plaintiff's physical limitations. Instead, the Plaintiff's testimony concluded with the following colloquy:

> [Judge]: Is there anything you want to tell me that I haven't asked you about?
> [Plaintiff]: Basically, man, that just — I'm not — the last jobs I had because of my asthma. Now the mental thing wasn't even an issue. I tried to never let them know I had — I was diagnosed paranoid schizophrenic years ago. Dr. Linhar said the only case that he really saw that I, the improvement I made. But he wanted me to stay on the medicine. I stepped out in faith, thought I didn't need it. For years I did good and now I'm having like symptoms of that. Like the devil trying to make me think that I'm going to lose my mind again. Because they've had me in the (inaudible). I been in the psychiatric stuff and all that but I came out of it. God is — he brought me out of it.
> [Judge]: Okay.
> [Plaintiff]: So I ain't really, you know, just my thing now is holding a job it be an issue because, you know, they don't, you know, they don't (inaudible) you know.

R. at 32–33. Judge Sloss did not inquire further regarding Plaintiff's mental condition. Rather, he briefly examined Plaintiff's companion, Ms. Brenda Crockett, asking her a single question: "Ms. Crockett, is there anything you would like to add?" *Id*. She responded that "if [Plaintiff]

-6-

doesn't, you know, continue to take his medication which I what I help him do, remind him, hey did you take that medicine, that he forgets and gets off it. That's when we have major, major problems." *Id*. Judge Sloss did not inquire further. Rather, he proceeded to examine a vocational expert, Stephanee Leech, on available jobs for someone with Plaintiff's asthmatic limitations. R. at 34–38. Precisely twenty minutes after the hearing began, it concluded. R. at 23, 39. All questioning was done by Judge Sloss; Plaintiff asked no questions of the witnesses.

On July 9, 2010, Judge Sloss issued his decision denying Plaintiff's application. R. at 10–16. The single paragraph addressing Plaintiff's mental health issues provides:

> At the hearing the claimant alleged that he experienced flash backs. He had only recently (after filing his current application) resumed psychiatric treatment. The record shows that he had prior psychiatric issues in the 1990's and issues that were related to drug use. The record does not reflect this impairment is currently supported by evidence or that it would cause more than minimal limitations in the ability to perform work. Therefore, the undersigned finds that this additional impairment does not represent a severe impairment.

R. at 13. Plaintiff's lack of representation is addressed in a single sentence in the decision, which provides: "Although informed of the right to representation, the claimant chose to appear and testify without the assistance of an attorney or other representative." *Id*.

**B**

In December 2010, Plaintiff, now represented by counsel, filed a timely appeal from Judge Sloss's decision in this Court. In March, Plaintiff filed a motion for summary judgment, contending this case should be remanded to the Commissioner because Judge Sloss did not fully develop the record regarding Plaintiff's mental condition or evaluate its effects on his ability to work. ECF No. 10. Defendant responded with its own motion for summary judgment, contending that Judge Sloss's decision should be affirmed as it is supported by substantial

evidence. ECF No. 11. On August 23, 2011, Judge Binder issued a report and recommendation recommending that the Court grant Plaintiff's motion, deny Defendant's motion, and remand this case for further proceedings under sentence four of 42 U.S.C. § 405(g). ECF No. 12.

On September 6, 2011, Defendant timely filed two objections to Judge Binder's report. ECF No. 13. First, Defendant argues, "although Plaintiff was unrepresented at the hearing, he effectively waived his right to counsel." Def.'s Objections 2. Specifically, Defendant contends that Judge Binder erred in concluding that "Plaintiff's responses to the ALJ's questions regarding representation were so obscure that the ALJ was unable to understand them." *Id*. at 2–3. Rather, Defendant argues, "the ALJ's expressed confusion had nothing to do with whether Plaintiff understood his right to counsel or whether Plaintiff wished to proceed without professional representation. Rather . . . it pertained to the motives of the attorneys whom Plaintiff sought to hire." *Id*. at 3.

Second, Defendant asserts: "Contrary to the Magistrate Judge's finding, the ALJ fulfilled his obligation to develop the record." *Id*. at 4. Defendant argues: "Plaintiff indicated that it was his physical health that prevented him from working, rather than any mental condition, and that his mental condition was relatively controlled. Based on Plaintiff's representations, the ALJ reasonably chose not to seek additional medical evidence regarding Plaintiff's mental condition." *Id*. (internal citation omitted). Defendant concludes:

> In virtually any case, an ALJ could seek more evidence regarding a claimant's medical conditions. However, at some point the ALJ must decide that the evidence is sufficient to determine whether the claimant is disabled. Here, the ALJ was aware of Plaintiff's history of mental health treatment, and found him not disabled based on the significant number of medical records Plaintiff presented. The ALJ's decision not to seek more evidence was reasonable in light of Plaintiff's testimony.

*Id*. at 5. Each of Defendant's arguments is addressed in turn.

### III

### A

"Although a claimant does not have a constitutional right to counsel at a social security disability hearing, [he] does have a statutory and regulatory right to be represented should she choose to obtain counsel." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (citing 42 U.S.C. § 406; 20 C.F.R. § 404.1705). "If properly informed of this right," of course, "a claimant may waive it." *Id*.

To properly inform a plaintiff of this right, § 406 provides, the Commissioner of Social Security must "notify each claimant in writing . . . of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner . . . . Such notification shall also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge." 42 U.S.C. § 406(c).

As with waivers of the right to counsel generally, for a waiver of the right to counsel in a social security proceeding to be valid, it must be "knowingly and intelligently made." *Newberger v. Comm'r of Soc. Sec.*, 293 F. App'x 710 (11th Cir. 2008) (internal quotation marks omitted) (citing *Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982)); *see also Thomas v. Barnhart*, 54 F. App'x 873, 877 (7th Cir. 2003) ("This right can be waived if the ALJ provides the claimant with sufficient information to make such a waiver knowingly and intelligently." (citing *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir.1991)).

In *Thompson*, for example, the plaintiff argued that his purported waiver was ineffective because he did not understand his right to representation. 955 F.2d at 584–85. At the hearing, the ALJ and the plaintiff had the following exchange:

| | |
|---|---|
| [Judge]: | You were informed, Mr. Thompson, that you had a right to have a lawyer to represent you if you wanted to? |
| [Plaintiff]: | Yes. |
| [Judge]: | And you gave up the right to have a lawyer represent you? |
| [Plaintiff]: | Well, I couldn't get one — I couldn't get one by legal help, I couldn't get — I wasn't able to pay for one. |
| [Judge]: | Uh-huh. Okay, so you-you tried to get one? |
| [Plaintiff]: | Yes. |
| [Judge]: | And you didn't get a lawyer? |
| [Plaintiff]: | No. |
| [Judge]: | So, you know, you can — you have a right to have a lawyer, you don't have to have a lawyer, it's up to you. You — you gave up your right to have a lawyer? |
| [Plaintiff]: | Yes. |

*Id*. at 585. "After considering [the plaintiff's] testimony at the hearing," the Seventh Circuit concluded, "we do not agree with the Secretary [that the plaintiff understood his right to counsel]." *Id*. "[The plaintiff's] attempt to secure counsel through legal aid strongly suggests that he desired representation," the court observed, ruling that his evident confusion about his rights rendered his purported waiver ineffective. *Id*.

In this case, as in *Thompson*, the discussion between Judge Sloss and Plaintiff suggests that Plaintiff did not understand his statutory rights. After reciting Plaintiff's rights, the two gentlemen had the following conversation:

| | |
|---|---|
| [Judge]: | Do you understand your rights to getting a representative? |
| [Plaintiff]: | Yeah, I did. Yeah, she's just a friend, yeah. |
| [Judge]: | Okay. Would you like to try and get a professional — |
| [Plaintiff]: | I, I, I had talked to somebody. They just, the time span they just sounded like they just wanted me to wait for monetary reasons. |
| [Judge]: | They wanted you to wait for monetary reasons? |

-10-

| | |
|---|---|
| [Plaintiff]: | Yeah, they was talking about, well, it'd been long enough if you wait this at the time, you know. |
| [Judge]: | Okay. I don't really understand what you're saying. |
| [Plaintiff]: | They saying like if, like if I didn't — if got them they wanted to postpone it. Because the longer it take the more money I would get but I didn't want to go through that. |
| [Judge]: | No, that doesn't make too much sense. |
| [Plaintiff]: | Well, the two lawyers I talked to that's what they said. They wanted me to put it off. |
| [Judge]: | Okay. |
| [Plaintiff]: | I had hired Tim Wright (Phonetic), I had him but I talked to him when he came to the house and he said, well, they don't usually see a case this early, that's a bad sign. We need to tell the Judge that you want to, well, all that crazy stuff. And I said, well, may I, you know. So I told him I didn't want him. |
| [Judge]: | All right. |
| [Plaintiff]: | I authorized him to get documents and stuff and he sent the stuff that he, I told him I didn't want him, so he sent them to me. |
| [Judge]: | Okay, all right. Well, do you want to proceed today by yourself — |
| [Plaintiff]: | Yeah. |
| [Judge]: | — or would you like to try and get a Representative? |
| [Plaintiff]: | No. |
| [Judge]: | If you tried to get a Representative it would only postpone it about a month. |
| [Plaintiff]: | I don't want to — |
| [Judge]: | Okay. |
| [Plaintiff]: | — I don't nobody. |
| [Judge]: | Okay, all right. |

R. at 24–25. Relying on this conversation, Defendant contends that Judge Binder incorrectly concluded that "Plaintiff's responses to the ALJ's questions regarding representation were so obscure that the ALJ was unable to understand them." Def.'s Objections at 2–3. Defendant's objection is not well placed.

Although Defendant is likely correct "the ALJ's expressed confusion . . . pertained to the motives of the attorneys whom Plaintiff sought to hire," *id.* at 3, the discussion quoted above demonstrates that the confusion was not limited to the attorneys' motives. When Judge Sloss

-11-

asked: "Do you understand your rights to getting a representative?" for example, Plaintiff responded: "Yeah, I did. Yeah, she's just a friend, yeah." This response does not demonstrate Plaintiff understood the substantial legal rights that he was purportedly waiving. Likewise, when Judge Sloss asked "Would you like to try and get a professional?" Plaintiff responded "I, I, I had talked to somebody. They just, the time span they just sounded like they just wanted me to wait for monetary reasons." As in *Thompson*, this exchange demonstrates not that Plaintiff understood his rights, but that he was confused about them. When Judge Sloss pressed "They wanted you to wait for monetary reasons?" Plaintiff responded "Yeah." As in *Thompson*, this exchange "strongly suggests that he desired representation." *Thompson*, 933 F.2d at 585. Similarly, when Judge Sloss concluded the conversation on the wavier issue by asking Plaintiff once more "[W]ould you like to try and get a Representative?" Plaintiff responded "I don't nobody." This unintelligible response does not demonstrate a knowing, intelligently made waiver. It demonstrates the opposite. Defendant's objection will be overruled.

Although the waiver was ineffective, "a claimant is not entitled to a remand unless the ALJ failed in his duty to fully and fairly develop the record." *Thomas*, 54 F. App'x at 878. Accordingly, the Court proceeds to consider Defendant's second objection — that "[c]ontrary to the Magistrate Judge's finding, the ALJ fulfilled his obligation to develop the record." Def.'s Objections 4.

### B

"Social security proceedings, unlike judicial ones, are inquisitorial, not adversarial." *Wright-Hines v. Comm'r of Soc. Sec*., 597 F.3d 392, 397 (6th Cir. 2010) (White, J., concurring) (citing *Sims v. Apfel*, 530 U.S. 103, 110-11(2000) (plurality)). As a general matter, "The burden

of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant." *Landsaw v. Sec'y Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)).

Significantly, however, when "special circumstances" exist — as in this case — "when a claimant is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures[,] an ALJ has a special, heightened duty to develop the record." *Wilson v. Comm'r Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008) (citing *Lashley v. Sec'y Health & Human Servs.*, 708 F.2d 1048, 1051–52 (6th Cir.1983)). "To satisfy this special duty," the Sixth Circuit instructs, "the administrative law judge must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Lashley*, 708 F.2d at 1052 (internal citations and quotation marks omitted) (quoting *Gold v. Sec'y of Health, Educ. & Welfare*, 463 F.2d 38, 43 (2d Cir. 1972)).

In *Lashley*, for example, the plaintiff, a seventy-nine-year-old stroke victim with a fifth grade education, displayed evident confusion and ineffective presentation of his case before the administrative law judge. 708 F.2d at 1052. The judge asked all the questions; the plaintiff asked none. *Id*. at 1050. Moreover, "The entire proceeding lasted only 25 minutes." *Id*. The Sixth Circuit — cautioning that "[t]here is no bright line test for determining when the administrative law judge . . . failed to fully develop the record" and that "[t]he determination in each case must be made on a case by case basis" — concluded that the administrative law judge had not fulfilled his obligation to develop the record. *Id*. at 1052. Illustrating the inadequacy of

the judge's investigation, the court reproduced the following exchange between the ALJ and the plaintiff:

| | |
|---|---|
| [Judge]: | What do you do in the yard? |
| [Plaintiff]: | I try to mow the yard. |
| [Judge]: | Do you use a riding mower or push mower? |
| [Plaintiff]: | I tried to ride a riding mower but it hurts my head worser than the push mower. |
| [Judge]: | You usually use a push mower? |
| [Plaintiff]: | Yes, sir. |

*Id*. From this, the ALJ inferred "that plaintiff is a vigorous man who prefers a push mower to a power mower." *Id*. Rejecting this finding, the Sixth Circuit wrote: "This inference, however, appears to be unfounded. More probing questioning concerning how often the activity is attempted, how long he is capable of sustaining the activity, and what adverse consequences he suffers as a result of the activity would undoubtedly have provided more probative information concerning his physical limitations." *Id*. The court elaborated that "[s]uperficial questioning of inarticulate claimants or claimants with limited education, is likely to elicit responses which fail to portray accurately the extent of their limitations." *Id*.

In this case, as in *Lashley*, Judge Sloss's questioning of Plaintiff did not develop a full record regarding the extent of Plaintiff's limitations. For example, the judge asked:

| | |
|---|---|
| [Judge]: | At, at home are you able to cook your own meals, do housework, things like that? |
| [Plaintiff]: | I do microwave stuff. I'm all right, you know. I mean I don't, I'm no cook. |
| [Judge]: | Do you get out to go shopping, visit friends, go to church, things like that? |
| [Plaintiff]: | That's what she does, she takes me places. My mother, I live with my mother. |
| [Judge]: | Okay. And do you have trouble sitting for long periods of time? |
| [Plaintiff]: | Just because I get agitated not from soreness or back problem, I guess — |
| [Judge]: | Okay. |

> [Plaintiff]: — get agitated. I can't sit still long.
> [Judge]: How long can you stand and walk at one time?
> [Plaintiff]: As long as I'm not short — that's another thing I was going to say. If I walk five blocks I just have to chill for a minute, that's all, you know. It don't send me into no, I don't fall out or nothing but I just have to be careful.
> [Judge]: What's the heaviest thing you lift around the house?
> [Plaintiff]: See, I can, I can lift something like this. But if I try to lift a TV, which I can do it because I'm a man, I don't — I live with my mother, she's 70 some years old, so I have to lift stuff. . . .

R. at 31–32. As in *Lashley*, Judge Sloss did not probe how often these activities were attempted, how long Plaintiff is capable of sustaining these activities, or what adverse consequences he suffers as a result of the activities. Judge Sloss did not inquire, for example, regarding the size or weight of the television.

Likewise, Judge Sloss did not inquire further when Plaintiff volunteered that he was "diagnosed paranoid schizophrenic years ago" and elaborated: "For years I did good and now I'm having like symptoms of that. Like the devil trying to make me think that I'm going to lose my mind again. Because they've had me in the (inaudible)." R. at 33. Judge Sloss did not inquire, for example, about what particular mental symptoms Plaintiff was experiencing.

Similarly to *Lashley*, where the hearing lasted twenty-five minutes, in this case the hearing lasted just twenty minutes. While sympathetic to the exceptionally busy docket facing administrative law judges within the Social Security Administration,[1] the Court cannot conclude that "the special, heightened duty to develop the record" was sufficiently observed in this case. The case will be remanded to allow the opportunity for a fully developed record.

---

[1] *See, e.g.*, Damian Paletta & Dionne Searcey, *Review of Disability Claims Is Urged*, Wall St. J. (Dec. 22, 2011), *available at* http://online.wsj.com/article/SB10001424052970203686204577114901613234074.html (noting that "Social Security Administration's federal disability benefit is under strain as it struggles to deal with a giant influx of applications").

Finally, to it should be noted that, as a matter of both logic and experience, Defendant is doubtless correct that "[i]n virtually any case, an ALJ could seek more evidence regarding a claimant's medical conditions." Def.'s Objections 5. The law does not require an ALJ to seek all evidence possibly available — it requires only that the ALJ provide the plaintiff a full and fair hearing with a sufficiently developed record. Because the Court cannot conclude that this responsibility was adequately performed in this case, the case will be remanded.

IV

Accordingly, it is **ORDERED** that Defendant's objections to Judge Binder's report and recommendation (ECF No. 13) is **OVERRULED**.

It is further **ORDERED** that the Judge Binder's report and recommendation (ECF No. 12) is **ADOPTED**.

It is further **ORDERED** that Plaintiff's motion for summary judgment (ECF No. 10) is **GRANTED**.

It is further **ORDERED** that Defendant's motion for summary judgment (ECF No. 11) is **DENIED**.

It is further **ORDERED** that the findings of the case is **REMANDED** to the Commissioner for further proceedings under sentence four of 42 U.S.C. § 405(g).

                                              s/Thomas L. Ludington
                                              THOMAS L. LUDINGTON
                                              United States District Judge

Dated: January 11, 2012

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 11, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS